IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:17CR379 |
| vs. | |
| CHRISTOPHER H. FREEMONT, | FINDINGS AND RECOMMENDATION |
| Defendant. | |

This matter is before the Court on Defendant's Motion to Suppress ([Filing No. 44](#)). An evidentiary hearing was held on April 5, 2018. A transcript of the proceedings was filed on April 17, 2018. ([Filing No. 53](#).) A redacted transcript was filed on April 20, 2018. ([Filing No. 57](#).) The motion is now ripe for disposition.

Having considered the evidence presented and arguments made, the undersigned will recommend that the motion be denied.

## FACTS

On May 5, 2017, L.R. reported to Omaha National Law Enforcement Services that Defendant had assaulted her. ([Filing No. 44](#).) Based upon these allegations, Defendant was charged in Omaha Tribal Court with domestic abuse and aggravated assault. (TR. 15; Ex. 3.) On May 22, 2017, Defendant was arraigned by the tribal court, at which time Nate Merrick ("Mr. Merrick") was appointed as Defendant's lay advocate.[1] (Ex. 4.) Mr. Merrick is not a lawyer, did not go to law school, and does not have a college degree. (TR. 9.) Defendant appeared in tribal court with Mr. Merrick on October 25, 2017. A jury trial was set for December 27, 2017.

---

[1] The tribal court refers to lay advocates as "public defenders." However, the tribal court does not require these appointed public defenders to be lawyers or hold law degrees. (TR. 9.)

2

On October 1, 2017, FBI Special Agent Jeff Howard ("Agent Howard") began investigating Defendant.[2] The investigation dealt with the alleged May 5, 2017 assault, as well as a September 26, 2017 report to the Nebraska abuse and neglect hotline pertaining to Defendant. Agent Howard testified that he first became aware of the allegations against Defendant on or about October 1, 2017, when Police Chief Ed Tyndall gave him the hotline report. (TR. 5.) The report included allegations by L.R. that Defendant had assaulted her, and that L.R. suspected Defendant was kidnapping children from Walthill. (TR. 5.) Agent Howard testified that Chief Tyndall did not tell him that Defendant had pending charges in tribal court based upon the alleged May 5, 2017 assault. (TR. 10.) Chief Tyndall did not indicate to Agent Howard that the tribe would be investigating the hotline report, nor did Chief Tyndall follow up with Agent Howard about the report. (TR. 11.)

On November 14, 2017, Agent Howard visited Defendant at his home. Agent Howard spoke to the Defendant on the front porch of his home.[3] (TR. 7.) They discussed the incident that occurred with L.R. on May 5, 2017. (TR. 8.) Defendant told Agent Howard that tribal charges related to that incident were dropped.[4] (TR. 8.) Agent Howard did not have the opportunity to ask Defendant about anything other than the May 5, 2017 assault allegations because Defendant terminated their conversation. (TR. 13-14.) Agent Howard testified that when he spoke to Defendant, he was alone and was not working in conjunction with tribal law enforcement. (TR. 6-7.) Agent Howard did not know that Defendant was charged in tribal court before he went to Defendant's house. (TR. 12.)

On December 12, 2017, Defendant was charged in federal court with domestic assault by a habitual offender in violation of 18 U.S.C. § 117. (Filing No. 1.) The charges stem from the May 5, 2017 incident with L.R.

---

[2] Agent Howard investigates violations of federal law that occur on the Indian Reservations of Nebraska. (TR. 4.)

[3] The interview was audio recorded. (TR. 8; Ex. 1-2.)

[4] After meeting with Defendant, Agent Howard found out that the assault charges against Defendant were still pending in tribal court, contrary to what Defendant told him. (TR. 13.)

2

**DISCUSSION**

Defendant contends that the statements he made to Agent Howard on November 14, 2017 should be suppressed because the government violated his Sixth Amendment right to counsel. Defendant argues that because tribal charges were pending at the time he was questioned by Agent Howard, and Mr. Merrick had been appointed to represent him in connection with the tribal charges, his right to counsel had attached and was violated when Agent Howard interviewed him without the presence of counsel.

"The Sixth Amendment right to counsel is triggered at or after the time that judicial proceedings have been initiated whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Fellers v. United States*, 540 U.S. 519, 523 (2004) (quoting *Brewer v. Williams*, 430 U.S. 387, 398 (1997)). "[A]n accused is denied the basic protections of the Sixth Amendment when there [is] used against him at his trial evidence of his own incriminating words, which federal agents . . . deliberately elicited from him after he had been indicted and in the absence of his counsel." *Id*.

In *United States v. Red Bird*, 287 F.3d 709, 713 (8th Cir. 2002), the Eighth Circuit Court of Appeals concluded that the right to counsel may attach after a defendant has appeared in tribal court. However, *Red Bird* is very fact specific. In *Red Bird,* the tribe provided a licensed attorney to represent indigent defendants in tribal court. The Tribal Constitution guaranteed a defendant the right to be represented by an attorney. Several courts have concluded that the holding in *Red Bird* is limited to situations in which the defendant was represented by a licensed attorney in the tribal proceedings, as opposed to a layman. *See United States v. Killeaney*, No. 07-30063-01-KES, 2007 WL 4459348, *6 (D. S.D. Dec. 17, 2017) (finding *Red Bird* distinguishable where the defendant was not appointed a licensed attorney); *United States v. Whitefeather*, No. CR-05-3881-DWF. 2006 WL 763204, *2-3 (D. Minn. Mar. 24, 2006) (finding that Sixth Amendment right to counsel did not attach at tribal arraignment where the defendant was represented by a lay advocate). Thus, *Red Bird* is inapposite to the situation presented here.

Although Mr. Merrick was appointed by the tribal court as Defendant's "public defender" (*See* Ex. 4) on May 22, 2017, Mr. Merrick is not a licensed attorney, nor did Mr. Merrick attend

law school. Under the Tribal Code, a party in any judicial proceeding before a Court of the Omaha Tribe of Nebraska has the right to be represented by a lay counselor (not a professional attorney) to assist in the preparation and presentation of the party's case. (Ex 101; pg. 7, Section 1-5-1.) The Tribe is not obligated to provide or pay for lay counselors. This obligation rests entirely upon the person desiring such a counselor. (Ex 101; pg. 7 Section 1-5-1.) *See United States v. Grismore*, 546 F.2d 844, 847 (10th Cir. 1976) ("'Counsel' as referred to in the Sixth Amendment does not include a lay person, rather 'counsel' refers to a person authorized to the practice of law"); *Killeaney*, 2007 WL 4459348 at *5 ("The United States Supreme Court did not extend the Sixth Amendment to encompass the right to be represented before the bar of a court by a layman"). Defendant was not represented by an attorney until a federal public defender was appointed to represent him in this case on December 18, 2017. Consequently, Defendant's Sixth Amendment right to counsel had not attached at the time he was interviewed by Agent Howard on November 14, 2017.[5]

Defendant further argues that the FBI and Omaha Nation Law Enforcement Services worked "in tandem" to investigate Defendant. There is no evidence to support this claim. Agent Howard did not begin investigating Defendant until October 1, 2017, which was long after Defendant was arraigned in tribal court. Also, Agent Howard's investigation was much broader than that performed by tribal authorities, as it dealt not only with the alleged May 5, 2017 assault, but also included the September 26, 2017 report to the Nebraska abuse and neglect hotline. Chief Tyndall did not indicate to Agent Howard that the tribe would be investigating the hotline report, nor did Chief Tyndall follow up with Agent Howard about the report. Tribal authorities were not even present when Agent Howard interviewed Defendant. In short, there is no evidence to support the existence of a joint investigation or working relationship between the FBI and tribal authorities pertaining to Defendant.

---

[5] Notably, Agent Howard was not aware that Defendant was charged in tribal court when he went to Defendant's house. Thus, this is not even a situation in which a federal agent is aware of the existence of an attorney-client relationship. *See United States v. Alone*, No. CR. 11-50031-JLV, 2011 WL 2708732, *4 (D. S.D. July 12, 2011) (finding that the lack of knowledge on the part of FBI agents that the defendant was represented by counsel was "fatal to the application of *Red Bird*").

4

Moreover, even if Defendant could be deemed to have been represented by counsel in tribal court, Defendant's Sixth Amendment claims would still fail because the charges against Defendant in federal and tribal court are distinct. "The Sixth Amendment right to counsel is offense specific." *Red Bird,* 287 F.3d at 714-15. "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 715 (quotation omitted). The tribal complaint alleges that Defendant committed (1) domestic abuse in violation of Omaha Tribal Code § 11-2-1(a) by purposefully, knowingly or recklessly causing bodily injury to a household or former household member and (2) aggravated assault in violation of Omaha Tribal Code § 5-4-5 (Ex. 3) by "purposely, knowingly or recklessly attempt[ing] to cause serious bodily injury to [L.R.]." Defendant is federally charged with domestic assault by an habitual offender in violation of 18 U.S.C. § 117. The federal charge requires proof that a defendant has a criminal history of two or more intimate partner assaults. *See* 18 U.S.C. § 117. Neither of the tribal charges require such a showing. Thus, Defendant's Sixth Amendment rights were not violated.

For the reasons expressed above, the undersigned will recommend that the Motion to Suppress be denied.

Accordingly,

**IT IS HEREBY RECOMMENDED** to Chief United States District Court Judge Laurie Smith Camp that Defendant's Motion to Suppress (Filing No. 44) be denied.

Dated this 9th day of May, 2018.

BY THE COURT:

s/ Susan M. Bazis
United States Magistrate Judge

## ADMONITION

Pursuant to NECrimR 59.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.